UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF VIRGINIA
RICHMOND DIVISION

| | |
|---|---|
| Winfield Solutions, LLC,<br><br>                    Plaintiff,<br><br>v.<br><br>Southern States Cooperative, Inc. and GROWMARK, Inc.,<br><br>                    Defendants. | Civil Action No. 3:20-cv-972 |
| **COMPLAINT AND<br>DEMAND FOR JURY TRIAL** | |

**COMPLAINT**

For its Complaint against Defendants, Plaintiff states and alleges as follows:

**PARTIES, JURISDICTION
AND VENUE**

1. Plaintiff Winfield Solutions, LLC ("Winfield") is a Delaware limited liability company. Winfield's sole member is Land O'Lakes, Inc. ("Land O'Lakes"). Land O'Lakes is a Minnesota cooperative corporation with its principal place of business located in Arden Hills, Minnesota. Under 28 U.S.C. § 1332(c)(1), Land O'Lakes is a citizen of the State of Minnesota. Because its sole member is a citizen of the State of Minnesota, Winfield is also a citizen of the State of Minnesota.

2. Defendant Southern States Cooperative, Inc. ("Southern States") is a Virginia cooperative corporation with its principal place of business located in Richmond, Virginia. Under 28 U.S.C. § 1332(c)(1), Southern States is a citizen of the Commonwealth of Virginia.

3. Defendant GROWMARK, Inc. ("Growmark") is a Delaware corporation with its principal place of business located in Bloomington, Illinois. Under 28 U.S.C. § 1332(c)(1), Growmark is a citizen of the States of Delaware and Illinois.

4. The Court has subject-matter jurisdiction over this case under 28 U.S.C. § 1332(a)(1) based upon the complete diversity of citizenship between Winfield, on the one hand, and Southern States and Growmark, on the other hand, and the fact that the amount in controversy, exclusive of costs and interest, exceeds the sum of $75,000.00.

5. Venue is proper in this judicial district under 28 U.S.C. § 1391(b)(2).

## FACTS COMMON TO ALL COUNTS

**A.    Agreement.**

6. Winfield is engaged in the business of manufacturing and distributing seed, crop-protection products and other agricultural inputs.

7. Southern States is engaged in the business of selling seed, crop-protection products and other agricultural inputs to distributors and retailers.

8. On or about June 17, 2016, Winfield and Southern States entered into a contract identified as a Crop Inputs Supply Agreement ("Agreement"). A true and correct copy of the Agreement is attached to this Complaint as Exhibit A.

9. Under the terms of the Agreement, Southern States agreed to purchase all of its requirements for certain seed products and 95% of its requirements for certain pesticides, seed treatments and grain protectants, adjuvants, plant growth regulators and branded micronutrients (collectively "the Products") from Winfield during the term of the Agreement.

10. The initial term of the Agreement started on June 1, 2016, and runs through September 30, 2021. Following the expiration of the initial term, Winfield and Southern States

agreed that the Agreement would automatically renew for subsequent one-year terms, ending on September 30 of the applicable year. Either Winfield or Southern States could prevent the Agreement from renewing after the first renewal term by providing the other party with at least one year's prior written notice of non-renewal.

11. Winfield and Southern States acknowledged that the damages that Winfield would suffer as a result of Southern States' failure to honor its purchase obligations under the Agreement would be difficult, if not impossible, to determine. Accordingly, in the event that it breached its purchase obligations, under Section III(a)(ix)(8) of the Agreement, Southern States agreed to pay Winfield liquidated damages equal to 6% of the purchase price of any seed, pesticides, seed treatments and grain protectants, adjuvants, plant growth regulators and branded micronutrients that Southern States was required to purchase from Winfield under the Agreement, but instead purchased from other suppliers.

12. The Agreement also contemplated a potential sale or other transfer by Southern States of all or part of its business to a third party. Section VII(a) of the Agreement defined a "Change of Control" as (a) the sale by Southern States of substantially all of its Seed and/or Crop Protection Products business to any third party; (b) the sale of a controlling interest in Southern States to any third party; or (c) Southern States' transfer of any material portion of its Seed and/or Crop Protection Products business into any other entity. In the event of a such a Change in Control, Southern States agreed, subject to approval by Winfield, to transfer to the third party all of its rights and obligations under the Agreement.

13. Under Section VII(b) of the Agreement, Southern States agreed to provide Winfield with written notice of Southern States' intent to offer for sale, or Southern States' receipt of an offer from a third party related to Southern States' sale, of (a) substantially all of the assets

associated with its Agronomy Business Unit; (b) any facilities associated with its Agronomy Business Unit; or (c) any material portion of its Agronomy Business.  After receipt of such notice, Southern States agreed that Winfield would have thirty days to negotiate and enter into a letter of intent with Southern States to purchase the assets.  Southern States further agreed to deal exclusively and in good faith with Winfield during the thirty-day period.

**B.      Growmark Deal and Southern States' Failure to Honor Purchase Obligations.**

14.     On or about August 6, 2020, Southern States issued an announcement to its employees and certain members stating that it was establishing a "partnership" with Growmark under which Growmark would acquire the wholesale agronomy and energy business of Southern States.  Under this partnership, the announcement stated that Growmark would become "the primary supplier of wholesale crop inputs," i.e., the subject of the Agreement, as well as "fuels and propane for both" Southern States' "company owned locations and member cooperatives."  A true and correct copy of the announcement is attached to this Complaint as Exhibit B.

15.     On August 14, 2020, upon learning of the proposed business deal, Winfield sent a letter to both Southern States and Growmark notifying them that the proposed deal may result in a Change of Control within the meaning of Section VII(a) of the Agreement and that Growmark's failure to assume Southern States' obligations under the Agreement under those circumstances would interfere with Southern States' contractual obligations to Winfield under the Agreement.  A true and correct copy of Winfield's August 14, 2020, letter is attached to this Complaint as Exhibit C.

16.     Despite Winfield's August 14, 2020, letter, Southern States and Growmark completed the business deal referenced in the announcement.

17. The business deal between Southern States and Growmark qualified as a Change of Control under Section VII(a) of the Agreement.

18. Southern States failed to transfer its rights and obligations under the Agreement to Growmark as required by Section VII(a) of the Agreement.

19. The business deal between Southern States and Growmark also triggered Southern States' obligation under Section VII(b) of the Agreement to provide Winfield with written notice of its intent to sell and Growmark's offer to acquire, *inter alia*, "the wholesale agronomy . . . assets of Southern States," Ex. B., and a thirty-day period to negotiate, on an exclusive basis, a purchase of the assets that Southern States was planning to sell to Growmark.

20. Southern States failed to provide Winfield with written notice of its business deal with Growmark or any opportunity to negotiate a purchase of the assets that Southern States sold to Growmark.

21. After completing its business deal with Growmark, Southern States continued to purchase the Products from Winfield for its retail business.

22. During the fall of 2020, Southern States began dramatically reducing its purchases of the Products from Winfield for its retail business. Instead of purchasing the Products from Winfield, Southern States purchased substitute products from Growmark and/or other vendors. Based upon its plan to continue purchasing substitute products, Southern States informed Winfield that its purchases of the Products from Winfield during 2021 would only be about 20% of the volume of the purchases it made during 2020.

23. During 2019, Southern States purchased approximately $123 million of the Products from Winfield. From January 1, 2020, through December 14, 2020, Southern States purchased approximately $102 million of the Products from Winfield. Southern States' business

deal with Growmark, its reduction in purchases during the fall of 2020 and its anticipated further reduction in purchases during 2021, have caused and will continue to cause Winfield to suffer tens of millions of dollars of lost sales and profits and entitle Winfield to recover millions of dollars of liquidated and other damages.

24.  On November 24, 2020, Winfield sent a letter to Southern States demanding adequate assurances of Southern States' due performance under the Agreement. In particular, Winfield asked Southern States for (a) a detailed explanation why Southern States believed it was entitled to terminate its purchases of the Products from Winfield for its wholesale business; and (b) a signed statement from Southern States confirming that it would honor its purchase obligations under the Agreement for its retail business for the remainder of the Agreement. A true and correct copy of Winfield's November 24, 2020, letter is attached to this Complaint as Exhibit D.

25.  On December 18, 2020, Southern States' counsel sent a letter to Winfield purporting to respond to Winfield's request for adequate assurances, a true and correct copy of which is attached to this Complaint as Exhibit E.

26.  In his December 18, 2020, letter, Southern States' counsel stated that Southern States was refusing to provide the adequate assurances of performance requested by Winfield. He claimed that Winfield did not have sufficient grounds to request adequate assurances of performance from Southern States. Further, although Southern States' counsel claimed that the "GROWMARK transaction did not constitute a 'Change of Control' under Article VII( a) of the Agreement," he admitted that the GROWMARK "transaction entailed . . . GROWMARK assuming the wholesale agronomy . . . assets of Southern States" and that "[a]s result of this transaction, GROWMARK will provide certain wholesale crop inputs . . . to Southern States and its member cooperatives." Southern States' counsel also did not deny that Southern States has

been purchasing and plans to continue purchasing seed, pesticides, seed treatments and grain protectants, adjuvants, plant growth regulators and branded micronutrients from Growmark for its retail business. Southern States' purchases from Growmark constitute a clear breach of its purchase obligations under the Agreement.

27. Winfield has satisfied all conditions to the commencement and prosecution of this case.

## COUNT I
## BREACH OF CONTRACT
## (SOUTHERN STATES)

Winfield restates all of the foregoing paragraphs of this Complaint and further states and alleges as follows:

28. The Agreement is a valid and enforceable contract between Winfield and Southern States.

29. Under the terms of the Agreement, Southern States contracted and agreed: (a) to purchase all of its requirements for certain seed and 95% of its requirements for certain pesticides, seed treatments and grain protectants, adjuvants, plant growth regulators and branded micronutrients from Winfield during the term of the Agreement; (b) to transfer all of its rights and obligations under the Agreement to its permitted, third-party successor in the event of a Change in Control within the meaning of Section VII(a) of the Agreement; and (c) to provide Winfield with written notice of any offer for sale or receipt of an offer from a third party related to Southern States' sale or transfer of any assets covered by Section VII(b) of the Agreement and a thirty-day period to negotiate, on an exclusive basis, a purchase of the assets being sold or transferred.

30. Southern States breached its contractual obligations to Winfield under the Agreement by, among other things: (a) failing to purchase the seed, pesticides, seed treatments and

grain protectants, adjuvants, plant growth regulators and branded micronutrients that Southern States agreed to purchase from Winfield under the Agreement; (b) failing to transfer all of its rights and obligations under the Agreement to Growmark as required by Section VII(a) of the Agreement; (c) completing the transaction with Growmark without any commitment by Growmark to assume Southern States' contractual obligations under the Agreement; and (d) failing to provide Winfield with written notice of Southern States' offer to sell and Growmark's offer to acquire the assets being sold or transferred to Growmark, and a thirty-day period to negotiate, on an exclusive basis, a purchase as required by Section VII(b) of the Agreement.

31. Southern States also repudiated and breached the Agreement by failing to provide Winfield with the adequate assurances of due performance requested by Winfield in its November 24, 2020, letter.

32. Based upon Southern States' breach of its purchase obligations under the Agreement, Winfield is entitled to recover liquidated damages from Southern States under Section III(a)(ix)(8) of the Agreement in an amount equal to 6% of the purchase price of any seed, pesticides, seed treatments and grain protectants, adjuvants, plant growth regulators and branded micronutrients that Southern States agreed to purchase from Winfield under the Agreement, but instead purchased from Growmark or other suppliers. The amount of liquidated-damages recoverable by Winfield under Section III(a)(ix)(8) of the Agreement is reasonable in light of the anticipated and actual harm caused by Southern States' breach of its purchase obligations, the difficulty of proof of loss and the inconvenience and nonfeasibility of otherwise obtaining an adequate remedy.

33. Winfield has incurred damages as a direct and proximate result of Southern States' other breaches and repudiation of the Agreement, including lost revenues and profits, in an amount

to be proved at trial.  Winfield is entitled to recover these damages from Southern States, together with prejudgment interest and costs.

## COUNT II
## TORTIOUS INTERFERENCE WITH CONTRACT
## (GROWMARK)

Winfield restates all of the foregoing paragraphs of this Complaint and further states and alleges as follows:

34.     The Agreement is a valid and enforceable contract between Winfield and Southern States.

35.     At all pertinent times, Growmark was aware of the Agreement and had knowledge of the terms of the Agreement, including Southern States' obligations to purchase from Winfield all of its requirements for certain seed products and 95% of its requirements for certain pesticides, seed treatments and grain protectants, adjuvants, plant growth regulators and branded micronutrients.  Winfield provided Growmark with a copy of the Agreement along with its letter dated August 14, 2020.  Winfield also expressly warned Growmark that "[i]f Growmark does not agree to assume [Southern States'] rights and obligations [under the Agreement] and Southern States and Growmark proceed with the transaction anyway, Growmark will be interfering with Southern States' contractual obligations to Winfield United under the [Agreement]."  Ex. C.

36.     Growmark intentionally interfered with the Agreement and caused Southern States to breach the Agreement by (a) contracting with Southern States to, *inter alia*, "become [Southern States'] primary supplier of wholesale crop inputs," Ex. B, in spite of Southern States' existing contractual obligation—known to Growmark—to purchase its requirements of crop inputs from Winfield, thereby causing Southern States to fail to purchase the seed, pesticides, seed treatments and grain protectants, adjuvants, plant growth regulators and branded micronutrients that Southern

9

States agreed to purchase from Winfield under the Agreement; and (b) contracting with Southern States in such a manner that failed to provide for the transfer by Southern States and assumption by Growmark of Southern States' rights and obligations under the Agreement as required by Section VII(a) of the Agreement.

37. Growmark's actions were not justified and were, instead, wrongful and malicious.

38. As a direct and proximate result of Growmark's tortious interference with the Agreement, Winfield has incurred damages, including lost revenues and profits, in an amount to be proved at trial. Winfield is entitled to recover these damages from Growmark, together with prejudgment interest and costs.

## DEMAND FOR JURY TRIAL

Pursuant to Rule 38 of the Federal Rules of Civil Procedure and the Seventh Amendment to the United States Constitution, Winfield hereby demands a trial by jury.

## PRAYER FOR RELIEF

**WHEREFORE,** Winfield respectfully prays for this Court's judgment as follows:

1. Awarding Winfield liquidated damages against Southern States pursuant to Section III(a)(ix)(8) of the Agreement based upon Southern States' breach of its purchase obligations under the Agreement in an amount equal to 6% of the purchase price of any seed, pesticides, seed treatments and grain protectants, adjuvants, plant growth regulators and branded micronutrients that Southern States was required to purchase from Winfield under the Agreement, but instead purchased from Growmark or other suppliers;

2. Awarding Winfield damages against Southern States based upon its other breaches and repudiation of the Agreement in an amount to be proved at trial;

3. Awarding Winfield damages against Growmark for tortiously interfering with the Agreement in an amount to be proved at trial;

4. Awarding Winfield prejudgment interest;

5. Awarding Winfield all of its attorney fees, costs and disbursements; and

6. Granting Winfield all such other and further relief as the Court deems just and equitable under the circumstances.

Dated: December 21, 2020

Respectfully Submitted,

/s/ Mitchell K. Morris
Mitchell K. Morris (VSB No. 71298)
John P. Brown (VSB No. 90589)
Butler Snow LLP
919 East Main Street, Suite 600
Richmond, Virginia 23219
804.762.6030 (phone)
804.762.6031 (fax)
mitchell.morris@butlersnow.com
jp.brown@butlersnow.com
***Counsel for Winfield Solutions, LLC***